395 So.2d 1385 (1981)
Cynthia LLOYD, Individually and as Tutrix of Doris Lloyd and Eric Lloyd
v.
STATE of Louisiana.
No. 13968.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Rehearing Denied April 13, 1981.
*1386 Dennis R. Whalen, Baton Rouge, for plaintiffs-appellants Cynthia Lloyd, Ind., & as Tutrix of Doris Lloyd & Eric Lloyd.
Ben W. Lightfoot, Baton Rouge, for defendants-appellants Frank M. Edwards, Jr., and Jack Liuzza.
Arthur E. Stallworth, Dept. of Justice, Baton Rouge, for defendant-appellee State of Louisiana, through Dept. of Corrections.
Before ELLIS, COLE and WATKINS, JJ.
ELLIS, Judge:
This is a suit by Cynthia Lloyd, individually and as tutrix of Doris Lloyd and Eric Lloyd, for the wrongful death of their mother, Vertie Lloyd. Made defendants are the State of Louisiana, through the Department of Corrections, Walter Wren, Jr., Frank M. Edwards, J., and Jackie Liuzza. After trial on the merits, judgment was rendered in favor of plaintiffs and against Wren, Edwards and Liuzza for a total of $130,000.00. The final judgment was silent as to the State of Louisiana, and we assume that plaintiffs' claim as to it was dismissed. From that judgment, Edwards and Liuzza have appealed. Plaintiffs have answered that appeal, asking for damages for a frivolous appeal, and have appealed *1387 from the dismissal of the State of Louisiana.
The record shows that in 1972 Walter Wren, Jr., was sentenced to the state penitentiary for life for the murder of his wife. He was incarcerated at De Quincy until 1975, when, pursuant to a court order, signed by a Tangipahoa Parish District Judge, he was returned to the Tangipahoa Parish Jail. Edwards, who was at that time Sheriff of Tangipahoa Parish, testified that he probably arranged to have Wren returned to the parish jail. After a few months in the jail, Wren went to work on a dairy farm, leased by Edwards from Liuzza, who was Warden of the parish jail. He was given room and board and paid $35.00 per week. Edwards testified that the money went to Wren's family and was paid by him personally. At the dairy farm, Wren had access to a pickup truck, in which he delivered milk to the parish jail, and was relatively unrestricted in his movements. He also had access to a shotgun.
During the next two years, the State inquired after Wren on several occasions, but received no answers to the inquiries, and never followed up on any of them.
Wren struck up a relationship with Vertie Lloyd, plaintiffs' mother, while he was living at the dairy farm. After some time, they began to have difficulties, and on March 20, 1977, Wren murdered Mrs. Lloyd by shooting her in the head with a 12-gauge shotgun, which he had obtained at the dairy farm. He then surrendered himself and the gun to Liuzza, and, eventually, pled guilty to second degree murder and was again sentenced to life imprisonment.
The trial court found that both Edwards and Liuzza owed a duty to law abiding citizens to protect them "from a convicted shotgun murderer" whom they permitted "to have complete and unfettered use of a shotgun, ammunition and a pickup truck." In this court, Edwards and Liuzza argue that the murder of Mrs. Lloyd by Wren was not a foreseeable consequence of allowing Wren such freedom, in view of his record, which was entirely clear except for the murder of his first wife, and that they were therefore not negligent in their conduct.
We think it clear from the record that there was no legally constituted work relief program in effect in Tangipahoa Parish during the time Wren worked on the dairy farm, although Act 188 of 1968, which permitted such programs, was then in effect. We can find no provisions of the law which permit a felon to be returned to a parish jail from the custody of the Department of Corrections for no reason other than to work for a public official. Certainly, both Edwards and Liuzza exceeded their authority in pursuing this course of conduct. However, this conduct, of itself, does not necessarily subject them to civil liability for the torts of the prisoner. In Green v. State, 91 So.2d 153 (La.App. 1st Cir. 1956), an escape case, we said:
"An institution's duty to restrain a convicted criminal is not based upon the purpose of protecting the general public from all harms that the prisoner might inflict if he were allowed to escape. A convicted person may be as dangerous on the day of his legal release as he was on the first day that he was confined, although the institution may still be under a legal duty to detain or to release him. There is no more reason for the State to be civilly responsible for the convict's general misconduct during the period of his escape than for the same misconduct after a legal release, unless there is some further causal relationship than the release or escape to the injuries received."
The record reveals that the record of Walter Wren, Jr., was exemplary prior to and after the murder of his first wife. One employer characterized him as "dependable, honest, intelligent, hardworking, and ambitious" and another said he was "a leader, hard-worker, honest and very aggressive, cooperative, and dependable." He was incarcerated in LCIS at De Quincy from August, 1972, until March 21, 1975, and his record was clear. He was granted four *1388 furloughs home during that time, without incident.
After being returned to Tangipahoa Parish, in March, 1975, he remained in the parish jail for a few months, and then was sent to the dairy farm. He worked there without incident until he killed Vertie Lloyd on March 20, 1977, a period of about two years.
Under the above circumstances, we cannot find any liability on the part of Edwards, Liuzza or the State. Considering Wren's record, there was little reason to foresee that he would commit a second murder. We do not think that a sufficient connection has been established between Wren's release and the murder of plaintiffs' mother. We find that the judgment as to Edwards and Liuzza must be reversed.
Plaintiffs have asked for damages for the emotional trauma suffered by them when they discovered the dead body of their mother. The trial judge held that there was no authority for such an award. We agree. Plaintiffs are entitled to recover for their mental pain and anguish because of the wrongful death of their mother. However, they have no right to recover damages for whatever trauma they may have suffered as a result of finding their mother's mutilated body. Dupuy v. Pierce, 285 So.2d 321 (La.App. 3rd Cir. 1973).
The judgment below is therefore reversed and set aside insofar as it gives judgment against Edwards and Liuzza, and plaintiffs' suit will be dismissed as to them. In all other respects, the judgment is affirmed, at plaintiffs' cost.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.