704 So.2d 778 (1997)
Patrick M. WARTELLE and Kristine Wartelle
v.
WOMEN'S AND CHILDREN'S HOSPITAL, INC. and Louisiana Patients' Compensation Fund.
No. 97-C-0744.
Supreme Court of Louisiana.
December 2, 1997.
Dissenting Opinion December 15, 1997.
Rehearing Denied January 9, 1998.
*779 Stephen J. Oats, Lawrence E. Marino, Edgar D. Gankendorff, Oats & Hudson, Lafayette, for Applicant.
Jacque B. Pucheu, Jr., Eunice, for Respondent.
Dissenting Opinion of Justice Lemmon December 15, 1997.
MARCUS, Justice.[*]
Kristine Wartelle went into labor and was admitted to Women's and Children's Hospital to deliver her first child. A fetal heart monitor was attached through use of a belt-like device strapped around the mother's abdomen and all appeared to be well with mother and child. Subsequently the monitor was removed for a period of time. When it was reattached, it was determined that the fetus had died in utero; the fetus was delivered stillborn by caesarian section. The hospital tendered $100,000 to Kristine and Patrick Wartelle, parents of the stillborn fetus, in settlement of their claim that the failure of the hospital to monitor the fetal heart tones contributed to the death of the fetus. The settlement was approved by the trial judge and liability was deemed admitted.
Mr. and Mrs. Wartelle sued the hospital and the Louisiana Patients' Compensation Fund for damages in excess of $100,000 pursuant to the Medical Malpractice Act. La. R.S. 40:1299.41-1299.48. Specifically, they filed a survival action pursuant to La. Civ. Code art. 2315.1, an action for the wrongful death of the stillborn child pursuant to La. Civ.Code art. 2315.2, and an action pursuant to La. Civ.Code art. 2315.6 for their emotional distress and mental anguish as bystanders.
Prior to trial, an exception of no cause of action was granted as to the survival claim. The trial judge held that because the fetus was stillborn, it could not be considered a "person," as that term is used in La. Civ. Code art. 2315.1. After trial on the merits, judgment was rendered in favor of plaintiffs in the amount of $250,000, plus special damages of $8,993.37, subject to a credit for the $100,000 paid in settlement. The trial judge did not specify the extent to which the general damage award covered each of the two remaining claims before him.[1] Both parties appealed.
On original hearing, the court of appeal reversed the trial court's judgment insofar as it had dismissed the survival claim; it remanded the matter to the trial court for the taking of evidence on damages suffered by the fetus. It affirmed the general damage award of $250,000, interpreting the entire award as made for the wrongful death of the stillborn child. The judgment was amended to add an additional $5,000.00 in recognition of the parents' claim for bystander damages under La. Civ.Code art. 2315.6.[2] On rehearing, the court of appeal determined that the evidence in the record was sufficient to support an award on the survival claim without the necessity of a remand; it rendered judgment in the amount of $50,000 on that claim. It also increased the bystander damages to $25,000 for each parent, thereby increasing the total award made by the trial judge by $100,000. Upon application of the Louisiana Patients' Compensation Fund, we granted certiorari to review the correctness of that decision.[3]
The issues presented for our review are: 1) whether a survival action can be pursued in connection with the death of a stillborn fetus; 2) whether plaintiffs have a valid claim *780 for bystander damages pursuant to La. Civ. Code art. 2315.6; and 3) whether the amount of damages awarded was excessive.

THE SURVIVAL ACTION
La. Civ.Code art. 2315.1 provides in pertinent part:
A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased (emphasis added)....
The initial question presented for our review is whether a stillborn fetus is a "person" who can sustain injury and transmit a survival action to recover for those injuries. In keeping with established rules of interpretation, we look to other provisions of the Civil Code for guidance in determining who is considered a "person" in the eyes of the law. La. Civ.Code art. 12; Thibaut v. Board of Com'rs of Lafourche Basin Levee Dist., 153 La. 501, 96 So. 47 (1923). The Louisiana Civil Code is a general system of law promulgated by legislative authority, and effect must be given to all of its provisions as such. Its various articles forming parts of a complete system must be construed with reference to each other and to harmonize with its general purpose. Lowe v. Home Owners' Loan Corp., 199 La. 672, 6 So.2d 726 (1942).[4]
Book I, Title I, of the Civil Code is entitled "Natural and Juridical Persons." It was extensively revised in 1987 on recommendation of the Louisiana Law Institute. Article 24 explains that there are two kinds of persons, natural and juridical persons. A natural person is a human being. A juridical person is an entity such as a corporation or partnership. Article 25 provides that:
Natural personality commences from the moment of live birth and terminates at death.
Accordingly, article 25 establishes the general rule that an unborn fetus is not recognized as possessing legal personality.[5]
The Louisiana Civil Code's refusal to accord uncondition al legal personality to a fetus before live birth constitutes no moral or philosophical judgment on the value of the fetus, nor any comment on its essential humanity. Rather, the classification of "person" is made solely for the purpose of facilitating determinations about the attachment of legal rights and duties. "Person" is a term of art, as explained in A.N. Yiannopoulos, Louisiana Civil Law Systems § 48 (1977):
According to the Romanist tradition, rights and duties attach to, or are conferred by law upon, "persons." Civilian terminology thus employs the word person in a technical sense to signify a subject of rights or duties.
The Code admits of two exceptions to the general rule that an unborn fetus is not a person. Article 26 provides:
An unborn child shall be considered as a natural child for whatever relates to its interests from the moment of conception. If the child is born dead, it shall be considered never to have existed as a person, *781 except for purposes of actions resulting from its wrongful death.
The first exception found in article 26 accords to an unborn fetus provisional legal personality for its own interests conditioned on its subsequent live birth, such that it can acquire a cause of action and inherit while en ventre sa mere. Article 26 does not confer actual legal personality; it provides that the fetus shall only be "considered" as a natural child and it limits the fictional personality of the fetus to matters that advance the interests of the fetus. The second sentence of the article makes it clear that if the fetus is born dead, that fictional personality is erased and the fetus is considered "never to have existed as a person." Thus, the first exception from the general rule allows the fetus to have the legal status of a "person" from the moment of conception as to rights acquired by it in utero, but only if the fetus is subsequently born alive. Pursuant to this exception, our jurisprudence has recognized that the fetus can acquire a cause of action in utero contemporaneous with its tortious injury. However, the cause of action can be pursued only if the fetus is subsequently born alive.[6]
A survival action for damages suffered by a stillborn fetus clearly does not fit within this first exception to the general rule because the stillborn fetus, even though it may have provisionally acquired an action in utero, is not born alive. Because it is born dead, it is as though it had never existed and the cause of action it acquired conditioned on live birth is considered as never having been acquired. A survival action is based on the victim's right to recovery being transferred upon the victim's death to the beneficiary. Taylor v. Giddens, 92-3054 (La.5/24/93), 618 So.2d 834. The stillborn fetus cannot transmit any rights, because under the law it acquires none.
The second exception from the general rule deals with a fetus born dead and actions resulting from its wrongful death. For purposes of "actions resulting from its wrongful death," the fetus will be considered as a "person" even though it is born dead. Plaintiffs argue that a survival action fits within this second exception because it is an action "resulting from wrongful death." We do not agree.
The recognition of a survival action in Louisiana law dates back to 1855 when Civil Code art. 2315 was amended to allow a "survival action" for recoupment of the damages suffered by the decedent before death.[7] Prior to that time, a survival action was not permitted; an action for personal injury abated with the death of the injured party. Almost thirty years later, in 1884, Civil Code art. 2315 was again amended to allow a "wrongful death action" to the same class of plaintiffs previously permitted to pursue the survival action.[8] Before the amendment, no cause of action was recognized for the losses suffered after the victim's death by those close to the decedent. Throughout the years, our jurisprudence has consistently maintained the distinction between a survival action and an action for wrongful death.[9] As recently as our decision in Taylor v. Giddens, 95-3054 (La.5/24/93), 618 So.2d 834, this court reiterated the differences between the actions:
Although both actions arise from a common tort, survival and wrongful death actions are separate and distinct. Guidry v. Theriot, 377 So.2d 319 (La.1979). Each arises at a different time and ad dresses itself to the recovery of damages for totally different injuries and losses. Id. The survival action comes into existence simultaneously with the existence of the tort and is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury to the moment of death. Id. It is in the nature of a succession *782 right. Comment, Wrongful Death: Prescription? Peremption? Confusion! 39 La.L.Rev. 1239, 1249 (1979). On the other hand, the wrongful death action does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter. Guidry v. Theriot, supra. Wrongful death damages compensate beneficiaries for their own injuries. 39 La.L.Rev. 1239, supra at 1249.
Based on our long established tradition of defining a survival action as an action that arises before death we cannot agree that a survival action "results from" the wrongful death of a fetus.[10] Thus the plain wording of article 26 instructs us that a survival action for injuries to a stillborn fetus does not fall within the exceptions to the general rule; the stillborn fetus is not a "person" who can acquire and transmit a survival action pursuant to article 2315.1.
We reject plaintiffs' argument that the meaning of the last phrase of article 26 is unclear.[11] However, even if we were persuaded that the text of the article is ambiguous, our interpretation of the code article would lead us to the same result. We recently reviewed settled principles of statutory interpretation in Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184. Legislative intent is the fundamental question in all cases of statutory interpretation. In searching for legislative intent, the legislative history of the enactment in question and contemporaneous circumstances are helpful guides. Laws are presumed to be passed with full knowledge of all existing ones on the same subject and with appreciation of the principles of statutory construction. When there is any doubt about the intent or meaning of a law in derogation of long accepted rules, the statute is given the effect that makes the least change in the existing body of law. Theriot, supra.
In 1987, when the legislature enacted new articles on "persons," it did so on recommendation of the Louisiana Law Institute, which is charged with ongoing revision of the Code to make it consistent with actual practice.[12] The exception from the general rule allowing a stillborn fetus to be considered as a person for purposes of "actions resulting from its wrongful death" was added at that time in recognition of this court's decision in Danos v. St. Pierre, 402 So.2d 633 (La.1981).
In Danos, we faced the question of whether a wrongful death action for the death of a stillborn fetus could be pursued. Based on the articles of the Civil Code then in existence, we concluded on rehearing that a wrongful death action could be maintained. In 1987, when the legislature enacted La. Civ.Code art. 26, it took note of our holding in Danos and codified it in the article.[13] Had *783 the legislature wished to go further to extend legal personality to a stillborn fetus for purposes of a survival action as well, it could have done so at that time. Indeed, just one year earlier in 1986, the legislature amended La. Civ.Code art. 2315 to remove survival actions and wrongful death actions from the basic provision and cover them separately in articles 2315.1 and 2315.2. In view of the recent treatment of these two related but distinct causes of action, we must conclude that the legislature was well aware of how to express itself as to those two very different causes of action and the accepted names for the distinct causes of action. Yet the legislature declined to mention the survival action in the exceptions it embodied in article 26.
The official comments to the revision articles and the testimony of the representative of the Louisiana Law Institute before the legislature explaining the import of the revisions make it clear that there was no intention to effect a change in the law.[14] While the revision comments do not form part of the law, they were presented together with the proposed legislation and illuminate the understanding and intent of the legislators. Comment (a) to article 26 specifically provides:
(a) This article is new. It is based on Articles 28, 29, and 956 of the Louisiana Civil Code of 1870. It does not change the law (emphasis added).[15]
At the time the legislature was considering enactment of article 26, this court had never recognized a stillborn fetus as a person for purposes of a survival action.[16] Indeed, in our original opinion in Danos, we expressed the contrary view, albeit in dicta.[17] Moreover *784 in Diefenderfer v. Louisiana Farm Bureau Mut. Ins. Co., 383 So.2d 1032 (La.App. 1st Cir.1980), the only reported decision to squarely address a survival action for a stillborn fetus, the court firmly rejected the action. As explained above, under the law as it existed at the time article 26 was adopted, a stillborn fetus was incapable of acquiring and transmitting rights. If we interpreted the phrase "actions resulting from its wrongful death" to include a survival action, we would be effecting a change in the law contrary to the legislature's apparent intent not to do so.
Finally, it is indisputable that La. Civ.Code art. 26 creates exceptions to the general rule that a stillborn fetus has no legal personality. It is a well settled rule of statutory construction that exceptions to a general rule are narrowly construed. State ex rel Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65 (1949). In view of our jurisprudence on the nature of a survival action and the legislative history of the revision articles, we would be unwilling to extend the scope of the exception in article 26 beyond the clear intendment of the legislature, even if we regarded the code article as ambiguous.[18] In keeping with our civilian tradition, our function is to interpret the law; the legislative function is entrusted to the legislature and the people exclusively.

THE LEJEUNE CLAIM
The next question presented for our review is whether the parents of a stillborn fetus can maintain an action for damages pursuant to La. Civ.Code art. 2315.6 which provides in part:
A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
....
(2) the father and mother of the injured person, or either of them.
....
B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotion al distress for injury to another shall be recovered only in accordance with this Article (emphasis added).
We again look for guidance in answering this question to the Civil Code articles on "persons." Having done so, we must conclude that a stillborn fetus is not a "person" for purposes of the bystander action unless that action fits into one of the exceptions in article 26. Clearly, the action cannot fit within the first exception in the article because the bystander action belongs to the parents; it is not pursued for the interests of the fetus but for the interests of the bystanders. In addition, the first exception to the general rule is conditioned on live birth, which did not occur here.
Nor can we agree with plaintiffs' argument that the bystander action "results from" the wrongful death of the fetus. First, a bystander action has no necessary relationship *785 to a death. Thus, it makes no sense to construe the phrase "actions resulting from its death" as including a bystander action. Furthermore, even when a death has occurred, as in this case, the bystander action does not "result from" the death. We have held that the action results from the breach of an independent duty owed by the tortfeasor to a bystander who is closely related to the victim.[19] In short, we do not read the exception for "actions resulting from its wrongful death" to encompass a bystander action. Accordingly, since that action does not fall within the exceptions set forth in article 26, a stillborn fetus cannot be considered a "person" for purposes of article 2315.6.
Nothing in the legislative history of article 2315.6 suggests a different conclusion. A cause of action for the emotional distress and mental anguish suffered by a bystander who witnesses injury to another person or comes upon the scene soon thereafter was not recognized in this state until our decision in Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990). The legislature enacted article 2315.6 in 1991 in response to that decision and codified the test for recovery we announced in Lejeune. Had it intended to permit a bystander action in connection with injury to a stillborn fetus, it could have further amended article 26 at the same time to make it clear that a bystander action is permitted with respect to a stillborn fetus. It did not do so.[20] The legislature is presumed to be aware of the principle of interpretation that refers us back to the code articles on "persons" when it enacts subsequent articles using terminology specifically dealt with in another part of the Code. In the face of the legislature's positive action creating an exception in article 26 for wrongful death actions and its failure to create a like exception when it codified the bystander action, we are unwilling to judicially expand the scope of the exception.[21]

DAMAGES
When the trial judge awarded damages in this case he had before him the parents' wrongful death claims and their claims for bystander damages pursuant to La. Civ.Code art. 2315.6. It is unclear from the award made whether or to what extent the total award he rendered took into consideration the bystander claims. Arguably, since the trial judge had already granted an exception on the basis that a stillborn fetus is not a person within the meaning of La. Civ.Code art. 2315.1, he may have likewise concluded, as we do today, that bystander damages cannot be awarded in connection with a stillborn fetus. Alternatively, he may have concluded that the proof offered by the parents in support of their bystander claims was properly considered in the context of their wrongful death claims. On the other hand, it is also conceivable that the trial judge intended his award to include a separate recognition of the parents' bystander claims.
We have held that when a prejudicial error of law skews the trial judge's finding on a material issue of fact, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Lasha v. Olin Corp., 93-0044 (La.10/18/93), 625 So.2d 1002. However, we are unable to determine in this case whether or not the trial judge committed an error of law by awarding damages pursuant to the bystander claims. Thus, we cannot determine whether we should reduce the award at all as a consequence of our holding that a bystander claim does not lie. We are similarly unable to review the reasonableness of the wrongful death award because we cannot ascertain what portion of the award was for *786 the wrongful death claim. The court of appeal would be in no better position than we are to confront these issues. Accordingly, we consider it appropriate to remand the matter to the trial court for the fixing of damages consistent with this opinion, reserving to both parties a right to appeal from the damage award made on remand.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside. The case is remanded to the trial court for the fixing of damages and the rendering of an appropriate judgment.
LEMMON, J., dissents and assigns reasons.
LEMMON, Judge, dissenting.
The critical inquiry is the meaning of La. Civ.Code art. 26's language "except for purposes of actions resulting from its wrongful death." The word "it" in that language refers to the unborn child who is born dead.
But for its wrongful death, the unborn child in the present case would have been born alive. Until the death-causing medical malpractice committed by the admitted tortfeasor during the delivery, the unborn child was a live, full-term and fully viable fetus.
As this court noted in Danos v. St. Pierre, 402 So.2d 633 (La.1981)(on reh'g), it would be arbitrary and illogical to reward the tortfeasor with immunity from liability because the tortfeasor injured a viable fetus seriously enough to cause its death just before birth, rather than immediately after the birth. When the Legislature heeded that reasoning by this court and amended Article 26 to add the pertinent language, the lawmakers clearly reserved all actions resulting from a tort committed on a viable fetus that caused the fetus wrongfully to be born dead.
In Thomas J. Andre, Louisiana Wrongful Death and Survival Actions § 9.3 (2d ed.1993), cited by the majority, the author notes that recognizing a survival action in favor of an unborn child who is born dead solely because of a tort would be a logical extension of Danos. The author continues:
The applicability of article 2315 to both wrongful death and survival actions depends upon a finding that there is an "injured person." If an unborn child is an injured person for purposes of a wrongful death action, as Danos held, then an unborn child should also be an "injured person" for purposes of the survival action.
A viable full-term fetus killed by medical malpractice just before its birth presumably has the capacity to feel and to sustain conscious pain and suffering. When the evidence presented by the survival action beneficiaries establishes that the viable fetus, more probably than not, sustained conscious pain and suffering inflicted by the death-causing tort, the survival action falls within the contemplation of Article 26 as an action resulting from the viable fetus' "wrongful death."
In the present case, there is no doubt that the viable full-term fetus would be entitled to recover for the pain and suffering sustained because of medical negligence during its birth, if it had lived for one second or longer. That recovery should not be denied to the survivors solely because the medical negligence killed the child in the womb just before birth rather than just after. The killing of the child, either just before or just after birth, gives rise to a survival action resulting from the child's wrongfully-caused death.
It is equally incorrect to deny bystander damages under La. Civ.Code art. 2315.6 even to the laboring mother who not only saw, but also sensed, the death-dealing tort to her child who, but for that tort, would momentarily have been born alive.
NOTES
[*] KNOLL, J., not on panel; recused. Rule IV, Part 2, § 3.
[1] In his reasons for judgment, the trial judge indicated that he was making an "in globo" award.
[2] 95-736 (La.App. 3rd Cir. 5/22/96), 676 So.2d 632; on rehearing, 95-736 (La.App. 3rd Cir. 2/19/97), 690 So.2d 856.
[3] 97-0744 (La.5/9/97), 693 So.2d 779.
[4] See Albert Tate, Jr., Techniques of Judicial Interpretation in Louisiana, 22 La. L.Rev. 727 (1962). The respected jurist there explained:

Our Civil Code is a comprehensive, systematic, and coherent enactment regulating most of the area of private law.... The code is sup posed to be a self sufficient and logically interdependent enactment, to be construed as a whole, and to regulate entirely the relation ships and incidents within its scope without reference to other authoritative sources of law. 22 La. L.Rev. at 728.
[5] Prior to 1987, the Civil Code contained the following definition of "person" at Civil Code art. 3556(23):

Person.  Person is applicable to men and women, or either.
This definition of "person" was eliminated from article 3556 by La. Acts 1987, No. 125, § 2, the same Act that amended and reenacted Title 1, Book 1, of the Civil Code concerning "persons." It is apparent that the legislature considered it unnecessary to have a separate definition of "person" in the Civil Code in view of the comprehensive treatment of the concept of legal personality in the revised Civil Code articles. In presenting its recommendations to the full Council of the Louisiana Law Institute, the Committee working on the revision articles suggested that article 3556(23) be suppressed as no longer needed.
[6] See Vicknair v. Hibernia Bldg. Corp., 468 So.2d 695 (La.App. 4th Cir.1985), rev'd on other grounds, 479 So.2d 904 (La.1985); Bunch v. Mercy Hosp. of New Orleans, 404 So.2d 520 (La.App. 4th Cir.1981), writ denied, 407 So.2d 750.
[7] La. Acts 1855, No. 223.
[8] La. Acts 1884, No. 71.
[9] La. Civ.Code art. 2315 has been amended on numerous occasions since 1884 but the language of the article has always maintained the distinction between the survival action and the wrongful death action.
[10] For a more extensive discussion of the nature of the survival action and damages recoverable pursuant thereto, see Thomas J. Andre, Louisiana Wrongful Death and Survival Actions, (2nd ed.1993).
[11] Plaintiffs argue that the use of the plural, "actions," indicates that more than one type of action is covered by the exception. However, several "actions" for the wrongful death of a single victim can be pursued where there are multiple claimants. In this case there are two actions for wrongful death being pursued by the father and mother of the stillborn fetus. In the face of the longstanding jurisprudence of this state, we do not view the use of the term "actions" as creating any ambiguity in the code article.
[12] La. Acts 1948, No. 335.
[13] In 1981, in Danos, we reasoned that since the articles on "persons" predated the authorization granted in article 2315 for a wrongful death action, it was unnecessary to read the articles in pari materia. However, the creation of a specific exception in 1987 to recognize the legal personality of a stillborn fetus for purposes of a wrongful death action within the section of the Civil Code dealing with "persons," renders it inappropriate for us to continue to disregard the articles on "persons" when we address actions having their origin in La. Civ.Code art. 2315. By introducing a reference to the wrongful death action into article 26, the legislature evidenced its intent that the articles on "persons" are to be read in pari materia with the seminal tort article and its progeny.

Moreover, we have held that the survival action is in the nature of a heritable action. Guidry v. Theriot, 377 So.2d 319 (La.1979), rev'd in part on other grounds in Louviere v. Shell Oil Co., 440 So.2d 93 (La.1983). The focus is on whether the decedent would have been able to bring the action and whether the decedent could transmit a heritable right. Civil Code articles 956 and 962 make it clear that a stillborn child cannot transmit property rights. Thus, even under the pre-revision articles in effect at the time of our decision in Danos, we may well have reached the same conclusion as to the survival action that we reach today. See Danos, 402 So.2d at 638, n. 5; Thomas J. Andre, Louisiana Wrongful Death and Survival Actions § 9-3 (2nd ed.1993).
[14] The proposed revision articles were designated as House Bill 1137 and referred to the House Committee on Civil Law and Procedure. A.N. Yiannopoulos appeared before the House Committee for informational purposes. The bill was reported favorably, without opposition or discussion. See Minutes of the Committee on Civil Law and Procedure, May 12, 1987. The bill was also referred to the Senate Committee on the Judiciary. A.N. Yiannopoulos appeared again for informational purposes. Minutes of the Committee reflect his advice to the senators:

The only change in the law is the admission of the fact that there can be a wrongful death action for the death of an unborn child.
The bill was reported favorably without opposition. See Minutes of the Senate Committee on the Judiciary, approved June 9, 1987.
[15] Source article 28 provided:

Children born dead are considered as if they had never been born or conceived.
Article 28 was adopted verbatim from article 28 of the Civil Code of 1825, which in turn was taken verbatim from Book 1, Article 5, of the Digest of 1808. The concept of the fictitious personality of the unborn fetus, conditioned on its subsequent live birth, is also embodied in the Swiss, Italian, and Greek civil codes. The Louisiana Law Institute's drafts of the revision articles make no reference to a survival action for the death of a stillborn fetus but make repeated references to a wrongful death action. The reporter for the Committee working on the articles advised the Council of the Louisiana Law Institute at a meeting on Oct. 11, 1986, that the last phrase of the disputed article, "for purposes of actions resulting from its wrongful death," reflected Louisiana jurisprudence that allows the recovery of damages for the wrongful death of an unborn child. See materials prepared by A.N. Yiannopoulos for the Oct. 10-11, 1986, Meeting of the Louisiana Law Institute Council on the Revision of the Louisiana Civil Code of 1870 and the minutes of the proceedings of Oct. 11, 1986 prepared by James J. Carter, Jr., dated Feb. 3, 1987.
[16] Dicta in a few reported cases could be read to suggest that a survival action might lie in the event a fetus was stillborn. Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App. Orl.1951); Cooper v. Blanck, 39 So.2d 352 (La. App.Orl.1923). However, no reported case squarely dealing with the issue had so held.
[17] On original hearing we suggested:

A cause of action is a property right. It may arise by the effect of obligations or through the operation of law. C.C. 870. The owner ship of property and rights in property is confined to natural or juridical persons. C.C. 478. Cf. C.C. 493 (1870). In terms of property rights, which include rights of inheritance, a child's legal personality exists from the moment of its conception. See C.C. 29, 953-57 and 1482. However, under Article 28, the effect of acquiring a legal personality is dissolved if the child is not born alive; the stillborn child cannot acquire a cause of action, or any other form of property. Cf. C.C. 955-56 and 1482. A cause of action to recover damages caused by prenatal injury is a property right that remains inchoate until the "person" so injured is born alive. Compare Note, Torts  Prenatal Injuries  Characterization of Unborn Child as a "Person" Immaterial to Recovery, 20 La.L.Rev. (1960); Comment, Tort Liability for Prenatal Injury, 24 Tul.L.Rev. 435 (1950).
... [i]f the child is not born alive, the effects of its fictional legal personality are considered never to have existed.
....
... The stillborn child has no rights and can transmit none. Danos, 402 So.2d at 635-636.
On rehearing, we did not discuss the question of a survival action because the plaintiffs had not pursued a survival action in the case before us.
[18] Most other jurisdictions have permitted the parents of a stillborn child to recover survival damages. For a collection of authorities, see 84 ALR 3rd 432. However, the statutes governing such actions vary widely from jurisdiction to jurisdiction. Unlike most jurisdictions which are free to interpret their survival statutes as stand-alone enactments, Louisiana's survival action is authorized as part of a Civil Code that must be interpreted as an integrated whole.
[19] Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, 741 n. 11; Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990).
[20] The question of whether to allow bystander damages for witnessing injury to victims who do not meet the test for legal personality set forth in Book 1, Title 1, of the Civil Code addresses itself to the legislature.
[21] Our holding that a bystander action cannot be prosecuted with respect to in utero injuries to a stillborn fetus makes it unnecessary for us to reach the question of whether a bystander action can be prosecuted as a medical malpractice claim against the Louisiana Patient's Compensation Fund.