728 So.2d 1273 (1999)
Lawrence and Marie TRAHAN
v.
Robert L. McMANUS, M.D. et al.
No. 97-C-1224.
Supreme Court of Louisiana.
March 2, 1999.
Rehearing Denied April 1, 1999.
*1274 Joel E. Gooch, Lafayette, for Applicant.
J. Minos Simon, Lafayette, for Respondent.
Robert L. Roland, Chris LeBlanc, Baton Rouge, for Amicus Curiae Louisiana Hosp. Ass'n.
Larry M. Roedel, David A. Woolridge, Jr., Baton Rouge, for Amicus Curiae Louisiana Dental Ass'n.
Amy W. Phillips, Baton Rouge, for Amicus Curiae Louisiana State Medical Society.
Marc W. Judice, Lafayette, for Amicus Curiae Medical Protective Company.
*1275 LEMMON, Justice.[*]
The parents of Terry Trahan filed this action to recover damages under La. Civ. Code art. 2315.6 for their mental anguish and emotional distress resulting from their sons injury and death. The principal issues are (1) whether this action falls within the limitations of the Medical Malpractice Act, and (2) whether "bystander damages" are recoverable when the "event" observed by the plaintiffs that allegedly caused their mental anguish was the negligent omission of the doctor who failed to treat their son in the hospital emergency room for serious injuries sustained in an automobile accident.

Facts
Plaintiff Marie Trahan received a telephone message that her thirty-six year-old son, who was living with his parents at the time, had been injured in a one-vehicle accident. She went to the hospital emergency room, where her son appeared to be in pain. However, the doctor relieved Mrs. Trahan's anxiety by assuring her that her son was not seriously injured and simply needed bed rest. The doctor discharged the son about two and one-half hours after he had entered the hospital.
Unfortunately, the doctor had read the wrong chart, and Terry Trahan, as suggested by the vital signs on his chart, was suffering from shock and internal bleeding. At home, Terry Trahan complained of severe pain to both of his parents, and his condition continued to worsen. He died in the presence of his parents about seven hours after his discharge from the hospital.
Two separate actions arose from the alleged malpractice. Terry Trahan's widow, from whom he was separated at the time of his death, filed a survival and wrongful death action under La. Civ.Code arts. 2315.1 and 2315.2 against the doctor and the hospital on behalf of herself and their children. The doctor and his insurer settled the claim for his maximum exposure of $100,000 under the Medical Malpractice Act, and the widow and children reserved their rights against the Patient's Compensation Fund as to their claim for additional damages.[1]
Terry Trahan's parents separately filed the present action under La. Civ.Code art. 2315.6 against the doctor and his insurer.[2] Defendants responded with (1) an exception of no right of action, contending that plaintiffs were not within the category of persons entitled to emotional distress damages under Article 2315.6, since Terry Trahan was survived by a spouse and children; and (2) an exception of no cause of action, contending that the law did not authorize recovery of bystander damages under Article 2315.6 under the facts of this case, since plaintiffs did not witness the event that caused the injury to their son. The trial court maintained the exceptions, but the court of appeal reversed and remanded the case for trial on the merits. 94-167 (La.App. 3d Cir.3/22/95); 653 So.2d 89, cert. denied, 95-1018 (La.6/2/95); 654 So.2d 1112.
After trial, the jury, although finding the doctor was negligent, returned a verdict in favor of defendants, based on the additional finding that Terry Trahan did not suffer, as a result of the doctors negligence, "any injury that would not otherwise have been incurred." The jury thus apparently accepted defendants' argument that Terry Trahan would have died from the automobile accident injuries, even if he had been treated at the hospital.
The court of appeal reversed, with one judge dissenting. 96-669 (La.App. 3d Cir.2/19/97); 689 So.2d 696. First reiterating its earlier decision that plaintiffs had a cause of action for Article 2315.6 damages,[3] *1276 the court noted that the injury-causing event was the doctor's negligent discharge of the patient, which was viewed by the mother and which caused her severe and debilitating anguish. As to the father, the court stated that "the continuing event was visited almost instantaneously" on the father who was compelled to witness the distressing events of the final seven hours of his sons life. Id. at 5-7; 689 So.2d at 701.
The intermediate court further held that the trial judge erred in instructing the jury on the law and burdens of proof in a medical malpractice case, because this case did not fall under the Medical Malpractice Act. The court concluded that the Act only applies to a claim by the patient against a qualified health care provider.
The court then reviewed the record de novo, concluding that the doctor's negligence was a cause-in-fact of Terry Trahans death.[4] The court determined from the record that plaintiffs had proved Terry Trahan would have survived if the doctor had rendered proper care timely. Further determining that plaintiffs had proved their emotional distress was serious, severe and debilitating, the court awarded damages of $100,000 to each plaintiff.
On defendant's application, this court granted certiorari. 97-1224 (La.6/30/97); 696 So.2d 996.

Action for Article 2315.6 Damages under Medical Malpractice Act
The outset complaint to this court by defendants and amici relates to the holding by the court of appeal that this is not a medical malpractice action. The intermediate court made that ruling in the context of its determination that the trial judge erred when he instructed the jury on La.Rev.Stat. 9:2794 pertaining to the required elements of proof and the burden of proof in a medical malpractice action. Reasoning that plaintiffs were not patients of the defendant doctor and were not parties to a health care contract, the court held that the Medical Malpractice Act does not apply to an action by a third party for the mental anguish damages resulting from a patient's injury or death caused by the negligence of the patient's heath care provider. We disagree.
The cause of action for damages resulting from an injury to or death of a patient caused by a doctor is provided by Civil Code Articles 2315, 2315.1 and 2315.2. The Medical Malpractice Act simply provides procedures for and limitations on such causes of action when the doctor is a qualified health care provider. Similarly, Article 2315.6 provides a cause of action to specified persons for mental anguish damages resulting from an injury to or death of a patient caused by a doctor, subject to the procedures and limitations of the Medical Malpractice Act, when the specified relatives of the patient incur the mental anguish within the circumstances outlined in Article 2315.6.
The Act defines "malpractice" as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
*1277 La.Rev.Stat. 40:1299.41 A(8) (emphasis added).
The conduct complained of in the present case was an unintentional tort arising out of a qualified health care provider's failure to render professional services which should have been rendered to a patient. Each of the patient's parents was a "person having a claim under this Part for bodily injuries to or death of a patient on account of malpractice...." La.Rev.Stat. 40:1299.41 E(1).
In Hutchinson v. Patel, 637 So.2d 415, 428 (La.1994), a case in which a health care provider committed a tort against a person who was not his patient, this court noted that while the Medical Malpractice Act applies exclusively to claims arising from injury to or death of a patient, the claimant need not be a patient, and non-patient claimants may include representatives of a patient acting on the patient's behalf and "other persons with claims arising from injuries to or death of a patient." That language applies to the facts of the present case.
In summary, nothing in the Medical Malpractice Act distinguishes between damage claims by the patient under Article 2315, damage claims by statutory survivors of the patient under Articles 2315.1 and 2315.2, and damage claims by statutorily-limited relatives of the patient under Article 2315.6. The fact that the damages recoverable under Article 2315.6 are limited to mental anguish damages and to specifically required facts and circumstances does not serve to remove Article 2315.6 claims from the applicability of the Medical Malpractice Act, as long as the mental anguish arises from the injury to or death of a patient caused by the negligence of a qualified health care provider.

Recovery of Damages under Article 2315.6
For many years, Louisiana and other jurisdictions declined to recognize a cause of action for recovery of mental anguish damages based on negligent infliction of emotional distress when the claimant's mental anguish resulted from a tort-caused physical injury to another. See, e.g., Black v. Carrollton RR Co., 10 La. Ann. 33 (1855). Recovery in early cases was allowed only for mental anguish that was "parasitic" to a physical injury, when the claimant could show some sort of "impact," however slight, upon his person. See W. Page Keeton et al., Prosser & Keeton on Torts, 363 (5th ed.1984). Later cases allowed recovery for mental anguish when there was physical injury to a person other than the plaintiff, if the plaintiff was in the "zone of danger" of the harm that befell the other person. Id. at 365. The common rationale for limiting recovery to these situations was that, absent impact or a near miss, the defendant could not reasonably have anticipated any harm to the plaintiff and therefore should not be held liable for such harm. Id.
Probably the first reported modern case to allow a claim for bystander damages beyond the limits of the impact or zone of danger rules was Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). In Dillon, the California Supreme Court allowed a claim for emotional distress damages by a mother who saw her young daughter run over and killed by an automobile. The court stated that the mothers "shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident." Id. at 920 (emphasis added).
Prior to 1990, Louisiana followed the preDillon common law jurisprudence, even though mental anguish damages resulting from injury to another person literally fell within the scope of La. Civ.Code art. 2315. This court reconsidered that position in Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990), in which the plaintiff's husband was hospitalized in a comatose condition. The plaintiff entered the hospital room and observed her husband shortly after a nurse had cleaned some of the blood from wounds caused by rats chewing on her husband's face, neck and legs. Although the plaintiff was neither physically injured nor exposed to the physical injury that befell her husband, this court, applying the duty-risk analysis, held that the risk to a person of mental anguish damages occasioned by the negligent infliction of injury to a third person may, under certain circumstances, fall within the scope of the hospital's duty under Article 2315. The decision outlined four circumstances under which mental anguish damages *1278 may be recovered, the one pertinent to the present case being:
A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.[5]
Id. at 569-70 (emphasis added).
The following year, the Legislature codified the Lejeune decision by enacting La. Civ.Code art. 2315.6, which allows certain "persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter [to] recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury...."[6] La. Civ.Code art. 2315.6 A.
If recovery of mental anguish damages resulting from negligently caused physical injury to another person had been allowed prior to the Lejeune decision, a tortfeasor, under the literal terms of Article 2315, might have been held liable to repair any damages remotely caused by his or her fault. However, liability for fault does not extend to all damages that result from that fault. Hill v. Lundin & Assoc., 260 La. 542, 256 So.2d 620 (1972). As a matter of policy, the courts, under the scope of duty element of the duty-risk analysis, have established limitations on the extent of damages for which a tortfeasor is liable. See, e.g., PPG Industries v. Bean Dredging, Inc., 447 So.2d 1058 (La.1984), in which this court held that the liability of a dredging contractor who negligently damaged a natural gas pipeline does not extend to the economic losses incurred by the pipeline owner's contract customer who was required to obtain gas at a higher price from another source during the period of repair of the damaged pipeline. This court noted that the list of possible victims and the extent of economic damages might be extended indefinitely unless the court made a policy decision placing some limitation on the recovery of damages.
The Lejeune decision, while recognizing for the first time a claimant's right to recover mental anguish damages resulting from negligently caused physical injury to another, carefully delineated limitations on bystander recovery. But for this limitation, liability might have been extended, under the literal terms of Article 2315, to allow recovery of mental anguish damages by an acquaintance of the tort victim who learned of the injury by telephone call several days after the injury-causing event. The Legislature, in codifying the Lejeune decision, placed further limitations by specifying the category of persons who may recover. More significantly, the Legislature prohibited any recovery of mental anguish damages resulting from the negligent infliction of injury to another, except under the circumstances outlined in Article 2315.6.[7] Accordingly, this right of recovery has been recognized jurisprudentially and legislatively to exist only under very limited circumstances.

*1279 Article 2315.6 Damages in the Present Case

In the Dillon and Lejeune cases, the plaintiffs suffered mental distress contemporaneously with observing the event that immediately caused observable injury to another person. Emotional distress usually occurs contemporaneously with the observance of the event when the event is a negligent act by the tortfeasor. However, when the event is a negligent omission by the tortfeasor, such as frequently occurs in medical malpractice cases, the applicability of Article 2315.6 becomes more problematic for recovery of damages for mental distress resulting from observing an injury-causing event or arriving on the scene of the injury soon after the event while the victim is still in the condition, caused by the event, that creates emotional distress in the observer.
A historical review of cases allowing recovery of bystander damages shows that bystander damages are intended to provide a remedy when severe mental distress arises directly and immediately from the claimant's observing a traumatic injury-causing event to the direct victim. In order to recover, the claimant who observes the injury-causing event (or soon thereafter comes upon the scene of the injury) must be contemporaneously aware that the event has caused harm to the direct victim. The requirement of temporal proximity has always been at the root of allowing recovery for emotional distress caused by an injury to another, see Prosser & Keeton at 366, whether recovery is limited to one who actually witnessed a traumatic injury (as in Dillon), or whether recovery is extended to one coming soon upon the traumatic injury, as under the Louisiana rule. Recovery of damages for mental anguish has almost never been extended to one who observed the victim's suffering at a place other than where the injury-causing event occurred or at a time not closely connected to the event.
The requirements of Article 2315.6, when read together, suggest a need for temporal proximity between the tortious event, the victim's observable harm, and the plaintiff's mental distress arising from an awareness of the harm caused by the event.[8] The Legislature apparently intended to allow recovery of bystander damages to compensate for the immediate shock of witnessing a traumatic event which caused the direct victim immediate harm that is severe and apparent,[9] but not to compensate for the anguish and distress that normally accompany an injury to a loved one under all circumstances.[10]
*1280 The present case is complicated by the fact that the event which caused the injury and death was the automobile accident. The doctor's negligence was failing to read the correct chart and to provide treatment to the patient based on the data on the chart, which arguably caused the patient to lose his chance of surviving the automobile accident injuries. This negligence of omission, while a concurrent cause of the death (if plaintiffs proved cause-in-fact, an issue we do not reach), was not an injury-causing event in which the claimant was contemporaneously aware that the event had caused harm to the direct victim, as required for recovery of Article 2315.6 damages.
Even under the view of the court of appeal that the injury-causing event was the doctor's negligent discharge of the patient, that event was not a traumatic event likely to cause severe contemporaneous mental anguish to an observer, even though the ultimate consequences were tragic indeed. There was no observable harm to the direct victim that arose at the time of the negligent failure to treat, and no contemporaneous awareness of harm caused by the negligence. The doctor's negligent discharge of the patient, accompanied by mistaken assurances that the patient would soon recover, was not itself an emotionally shocking event. Similarly, the father's witnessing his son's arrival home from the hospital was not the witnessing of an injury-causing event, or the coming soon after upon the scene of an injury-causing event, for which bystander damages may be awarded under the strict limitations of Article 2315.6.
Furthermore, the observance of the injury-causing event in the present case can hardly be compared to witnessing the car crash that caused the decedent's injuries in the first place. Nor can it even compare to the situation in Wartelle v. Women's and Children's Hosp., 97-0744 (La.12/2/97); 704 So.2d 778, where the medical malpractice, the awareness of harm, and the ensuing mental anguish were all very close in time.[11]
We are aware of the decisions in Ochoa v. Superior Court (Santa Clara County), 39 Cal.3d 159, 216 Cal.Rptr.661, 703 P.2d 1 (1985)[12] and Love v. Cramer, 414 Pa.Super. 231, 606 A.2d 1175 (1992),[13] which arguably are favorable to the initial decision by the court of appeal in the present case that overruled the exception of no cause of action. First, even if Ochoa and Love expanded the circumstances under which bystander damages may be recovered in accordance with Dillon v. Legg, those were jurisprudential expansions of prior case law. The courts in Ochoa and Love were not limited, as Louisiana courts are, by a legislative edict that allows recovery only under specified circumstances *1281 and prohibits recovery under any other circumstances.
Second, it is doubtful that plaintiffs in the present case could recover even if this court adopted the jurisprudence expansion of bystander damages expressed in Ochoa. The court in Ochoa recognized that while the doctor's negligent failure to render treatment was not itself traumatic, bystander damages were recoverable because the plaintiff observed the doctor's conduct and was contemporaneously aware that the conduct was causing harm to the patient. Contemporaneous awareness of harm caused by the event has been a critical factor for recovery in almost all bystander damages cases, and there was no such contemporaneous awareness in the present case.
We accordingly conclude that the severe mental anguish undoubtedly experienced by plaintiffs in this case did not occur within the limited circumstances prescribed by Article 2315.6 as the sole basis for awarding damages for mental anguish caused by negligent injury inflicted upon another person.

Decree
The judgment of the court of appeal is reversed, and plaintiffs action is dismissed.
JOHNSON, J., concurs in part and dissents in part and assigns reasons.
JOHNSON, J., Concurring in part, Dissenting in part.
I join with the majority in holding clearly for the first time that a claimant may recover bystander damages under the Louisiana Medical Malpractice Act ("the Act"), La.Rev. Stat. Ann. § 40:1299.41 et seq. Prior jurisprudence limited recovery to claims by the patient or statutory survivors for bodily injuries to or death of the patient on account of malpractice by a covered health care provider. Today, the majority recognizes that bystander damages are recoverable under the Medical Malpractice Act and that claimants may recover for their own mental anguish damages caused by negligence in the treatment of a patient.
Having determined that the Medical Malpractice Act covers the damages recognized in Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), the majority concludes that these plaintiffs are not entitled to recovery because the event which caused Terry Trahan's injury and death was the automobile accident. In my view, Dr. McManus' negligence in reading the wrong chart, and his discharge of the patient without correct diagnosis and treatment was the event which caused the patient to lose his chance of survival. This was the injury-causing event which resulted in claimants being entitled to recovery under La. Civ.Code art. 2315.6.
Dr. McManus testified that American Legion Hospital had diagnostic tools available which could detect internal bleeding and that he would have performed some of these procedures had he not read the wrong chart. His testimony was as follows:
Q. So, with modern medicine, and all the technology we have today, that type of condition [internal bleeding], if properly cared for, you'd reasonably expect that this guy's life could be saved. There would be a good chance to be saved, is that right?
A. I think there's a chance. I don't think that I could basically say that his life would be saved, but there was a chance.
Q. But as a reasonable medical probability, if you had applied yourself, and applied all the diagnostic tools to locate this and control this, as a reasonable medical probability, you would say this man's life could have been saved?

A. Yes, sir. (emphasis added).
Q. Now, as far as you're concerned, Doctor, this person, Mr. Trahan, as you stated earlier, was an otherwise healthy person. So, the cause of his death was a loss of blood that resulted from the lack of attention, is that correct?
A. Yes, sir. This is what was stated yesterday by the pathologist.
In light of the evidence adduced at trial, the Third Circuit was correct in reversing the jury's verdict and awarding damages to the plaintiffs. The testimony of Dr. McManus clearly demonstrates that but for the negligent discharge, Terry Trahan would *1282 have had an excellent chance of survival. The assertion by the majority that the event which caused Terry's injury and death was the automobile accident is untenable.
Finally, turning to the question of whether these plaintiffs have satisfied all the prerequisites for receiving bystander damages. Lejeune effectively established the criteria for recovery of mental pain and anguish damages arising out of injury to third persons. Before damages are awarded, the following must be proven:
1. A claimant must show that he either viewed the accident or injury causing event or arrived upon the accident scene soon thereafter and before the victim's condition substantially changed.
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in claimant's position would suffer serious mental anguish from the experience.
3. The emotional distress sustained by claimant was serious and reasonably foreseeable, and compensation should only be allowed where the emotional injury is both severe and debilitating.
4. A close relationship existed between the direct victim and the claimant.[1]
The parties have stipulated that a close relationship existed between Terry and the plaintiffs. As such, the question is whether the remaining criteria are present. The facts in this case show that Mrs. Trahan picked her son up from the hospital, signed for his discharge and was personally instructed by McManus to put Terry to bed and watch over him. She then assisted Terry in getting into their vehicle. During their drive home, he kept falling on her. When they arrived at home, both Mr. and Mrs. Trahan walked Terry into the house. Once inside, Mrs. Trahan maintained a watchful eye over her son. Terry complained of back pain and discomfort. In an attempt to relieve the pain, Mrs. Trahan helped to turn him on his side. When it became apparent that Terry's condition was deteriorating, Mrs. Trahan called for an ambulance and accompanied her son back to the hospital. She further testified that because of Terry's death, she cannot sleep at night and constantly thinks about him. Despite getting very emotional, she and her husband visit Terry's grave almost daily. His death has left her in a state of constant grief for which she sought the professional help of Dr. Lyle LaCorgne, a licensed clinical psychologist.
Mr. Trahan was equally traumatized by his son's death. After assisting his son into the house and putting him in the bed, Mr. Trahan performed some outdoor chores and periodically checked on his son. Each time Mr. Trahan checked on Terry, he watched his son's face reflect a person experiencing severe pain. After hearing, "help me daddy my back is killing me", he turned Terry on his side and noticed that Terry's abdominal area had begun to swell. When he noticed that Terry was no longer breathing, Mr. Trahan desperately tried to provide Terry with what turned out to be his last few breaths by performing CPR.
The majority takes the position that there was no observable harm to Terry at the time of the negligent discharge, no contemporaneous awareness of harm caused by this negligence, and that the negligent discharge was not an emotionally shocking event. However, the record in this case shows that both plaintiffs viewed the graphic effects of the negligent discharge of their son. In essence, Terry died right before plaintiffs' eyes, as they desperately tried to relieve the agony he suffered during his last hours. Without question, the emotional distress they incurred as a result of his death was serious and it is reasonably foreseeable that parents would suffer emotional distress from witnessing the death of their son. The expert testimony proves that the plaintiffs experienced and continue to experience severe and debilitating emotional distress from Terry's death. The appellate court was correct in concluding that the injury-causing event was the negligent discharge of the patient and that Mr. *1283 and Mrs. Trahan suffered from emotional distress that was severe, debilitating, and foreseeable. The Court of Appeal's award to each plaintiff for mental anguish resulting from Terry's negligent discharge and death was correct.
For the aforementioned reasons, I concur in the portion of the judgment recognizing the right to recover 2315.6 bystander damages under the Medical Malpractice Act and respectfully dissent from the majority's holding that the plaintiffs have not met the prerequisites for recovery under La. Civ.Code art. 2315.6.
NOTES
[*] Marcus, J., not on panel. Rule IV, Part 2, § 3.
[1] The two actions were consolidated at one time, but later were severed. The attorneys at oral argument in the present case informed the court that the claims against the Fund for additional survival and wrongful death damages had been compromised.
[2] Plaintiffs had no right of action under Articles 2315.1 and 2315.2 because their son was survived by a spouse and children.
[3] Plaintiffs clearly had a right of action under Article 2315.6, which lists the tort victim's parents among the persons entitled to recover emotional distress damages. Unlike Articles 2315.1 and 2315.2, Article 2315.6 does not exclude parents from recovery when the tort victim is survived by a spouse or child.
[4] The court of appeal incorrectly applied the "law of the case" doctrine as an alternative basis for reversing the jury's factual determination regarding cause-in-fact. The earlier pronouncement by the court of appeal that the doctor's malpractice was a cause-in-fact of Terry Trahans death did not result from reviewing the evidence produced at a trial on the merits, but rather involved a review of a judgment on an exception of no cause of action for which the allegations of the petition were accepted as true only for the purpose of the exception. The jury's subsequent determination regarding cause-in-fact was based on evidence presented at trial, and the intermediate court's earlier pre-trial decision with respect to cause-in-fact did not constitute "the law of the case" in the review of the subsequent judgment on the merits.
[5] The other three circumstances listed by the court were:

The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery.
There must be a close relationship between the claimant and the direct victim.
Id. at 569-70.
[6] Other requirements for recovery under Article 2315.6 are that the harm to the injured person must be severe enough that one could reasonably expect the observer to suffer serious mental distress; the plaintiff must suffer emotional distress that is "severe, debilitating, and foreseeable"; and the plaintiff must have a specifically enumerated relationship with the injured person. The Legislature thus defined the "close relationship" that had been left as an open question in Lejeune.
[7] Article 2315.6B provides in part that "[d]amages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article." (emphasis added).
[8] This approach is consistent with the duty-risk considerations articulated in Lejeune, where this court recognized the need to proceed somewhat conservatively in what is still a relatively new area of tort law. Lejeune, 556 So.2d at 568-69. In Lejeune, this court stated that "the essence of the tort is the shock caused by the perception of the especially horrendous event.... The emotional injury must be directly attributable to the emotional impact of the plaintiffs observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim." 556 So.2d at 570, n. 11 (internal quotations and citations omitted). For the same reasons, recovery is not permitted when the plaintiff has merely been informed of the accident. See, e.g., Chamberlain v. State, Through D.O.T.D., 624 So.2d 874 (La.1993) (no recovery when victim's parents learned of accident from others). A non-contemporaneous onset of mental distress is not within the scope of the tortfeasor's liability, as limited by this court in Lejeune and by the Legislature in Article 2315.6, particularly when the tortious event was not itself shocking when it happened.
[9] This was the view taken by the dissenting judge in the first appeal in the present case. 653 So.2d at 94. See also Simmons v. Hartford Ins. Co., 786 F.Supp. 574 (E.D.La.1992), in which the court, applying Louisiana law as it stood after the Lejeune decision but before the enactment of Article 2315.6, stated:

For purposes of this action, the Court need not address whether [the victim's father] experienced such distress from the entire experience surrounding his daughter's death. Instead, our focus is on whether he experienced severe and debilitating distress specifically from "the shock caused by the perception of the especially horrendous event." That is, did [the father] suffer severe and debilitating distress solely as a result of his initial perception of the aftermath of the accident?
It follows that "the claimant must realize, at the time he witnesses the event, that the injuries are serious." Otherwise, the distress would not arise from the perception of the event, but rather from being told of the seriousness of the event at some future time.
Id. at 578 (emphasis added).
[10] The damages awarded to plaintiffs in this case were really more like the damages commonly awarded in a wrongful death action. But wrongful death damages cannot be awarded under the guise of bystander damages when the claimant did not experience shock or other emotional distress contemporaneously with viewing a traumatic injury to the victim. Cf. Lloyd v. State, 395 So.2d 1385 (La.App. 1st Cir.1981) (plaintiffs were allowed mental distress damages for their mother's wrongful death, but were not allowed bystander damages for finding her mutilated body).
[11] Today's decision should not be read as necessarily precluding recovery of bystander damages in all medical malpractice contexts. In Wartelle v. Women's and Children's Hosp., 97-0744 (La.12/2/97); 704 So.2d 778, the court did not reach the issue raised in the present case, recovery of bystander damages having been denied based on the "non-person" status of the stillborn child. 704 So.2d at 784-85. However, the plaintiffs in that case not only witnessed the defendants negligent act and the stillbirth that immediately resulted, but they also suffered mental anguish from contemporaneous awareness of the harm to the direct victim.
[12] In Ochoa, the plaintiffs witnessed their thirteen-year-old son's dying of pneumonia in juvenile custody because the authorities refused to provide adequate care or to let the parents take their son to a private doctor.
[13] In Love, the plaintiff witnessed the misdiagnosis of her mother's heart disease, and her mother died of congestive heart failure seven weeks later. Focusing on negligence by omission, the court allowed recovery of bystander damages because plaintiff witnessed both the negligent omission and the injurious consequences which eventually occurred, reasoning that "[i]t is enough if the negligence constituted the proximate cause of the injury, and of the resulting emotional trauma." Id. at 1177.
[1] Under La. Civ.Code art. 2315.6, this class is restricted to close relatives such as the spouse, children, parents, grandparents and siblings.