| .EDWARD A. de la HOUSSAYE, Judge Pro Tem.
This is an appeal by Edward Lee, in proper person, from a judgment denying his request for a preliminary injunction against the Louisiana Board of Pardon and Parole (“Parole Board”) and the Louisiana Department of Public Safety and Corrections (“DPSC”). We affirm.
FACTS AND PROCEDURAL HISTORY
On August 26, 1988, Edward Lee was sentenced to five years imprisonment after being found guilty of indecent behavior with a juvenile. On August 10, 1990, Lee was found guilty of molestation of a juvenile and was subsequently sentenced to *817 eight years imprisonment as a habitual offender. On November 20, 1994, Lee was released due to a diminution of his sentence based upon “good time” credit pursuant to LSA-R.S. 15:571.5.[2] Under LSA-R.S. 15:571.5(A), this type of release is “as if released on parole.” Lee v. State, 96-0108, pp. 4-5 (La.App. 1st Cir.9/27/96); 681 So.2d 1020, 1022, writ denied, 97-1016 (La.4/25/97); 692 So.2d 1099.
On November 18, 1994, Lee signed a “Diminution of Sentence” form which detailed the conditions of his release. .Condition Nine of these conditions provides: “I will agree to live and work at the places stated in my parole plan and will not change residence or employment until after I have permission to do so from the Parole Agent.” Although Lee signed the form, he wrote “(U.D.)” before his signature, indicating that he was signing the form “under duress.”[3] See Bancroft v. Louisiana Department of Corrections, 93-1934, p. 2 (La.App. 1st Cir.4/8/94); 635 So.2d 738, 740-741.
Thus, at the time of plaintiffs release, he had an approved residence plan. Thereafter, on August 7, 1997, plaintiffs girlfriend and her two children, 14 and 10 years old, moved into plaintiffs house because their house burned down. On January 5, 1998, plaintiffs parole officer visited plaintiff and told plaintiff that he was in violation of his conditions of parole and that he needed to move his girlfriend and her children out of his house. Apparently, plaintiff did not comply.
On January 21,1998, Lee filed a petition for preliminary injunction, seeking to prevent the Parole Board from arresting plaintiff for non-compliance with his release conditions. In his submissions to the trial court, plaintiff argued that he was not in violation of his conditions of release because he had not changed his residence without prior approval from his parole offi *818 cer; rather, his girlfriend and her children began to reside with him. Further, plaintiff argued that the parole ^officer was without authority to modify unilaterally Lee’s conditions of release, after Lee had agreed to the conditions, to prohibit him from residing with his girlfriend and her two children. The DPSC argued, however, that the parole officer did have the authority to place “reasonable and justified restrictions” on plaintiffs residential plan. Alternatively, DPSC argued that the Parole Board has the authority to add, after the prisoner has been released on parole, any specific restriction deemed appropriate.
The trial court denied Lee’s TRO application, and after a preliminary injunction hearing, the court granted judgment on March 9,1999, in the defendant’s favor and denied Lee’s injunction. In his oral reasons for judgment, the trial judge recited that release on diminution of sentence, like release on parole, is a privilege. Furthermore, the trial court stated: “Once you agree to the conditions of the diminution of your sentence, which one of those is to follow the reasonable requests of your parole officer, then you have to do that.” The trial court further found that the parole officer’s request, that Lee not live in the same house as his girlfriend and her two children, was reasonable. Lee’s motion for a devolutive appeal was signed on March 25,1999.[4]
DISCUSSION
Lee appeals and contests the trial court’s denial of his request for preliminary injunction. His brief on appeal presents two issues for our review: (1) whether Lee was in violation of Condition 9 of his Conditions of Release or whether his parole officer improperly restricted his living arrangements; and (2) whether Lee was entitled to a warning or a reprimand prior to his arrest for violation of his conditions of parole after his preliminary injunction was denied. The DPSC has Rnot responded to Lee’s appeal.
Condition of Release, No. 9
The first issue presented for our review concerns Condition 9 of Lee’s Conditions of Release. Lee asserts that the trial court incorrectly found that Condition 9 granted Lee’s parole officer the authority to order with whom Lee could co-habi-tate. Lee contends the prohibition against change of residence without prior approval restricts only a parolee’s change in address. Thus, Lee argues that the parole officer’s order that he not co-habitate with his girlfriend and her two children was unreasonable and exceeded the scope of his parole restrictions contained in Condition 9.
Louisiana Revised Statute 15:571.5, governing supervision of release after diminution of sentence, specifies that the parole board is authorized to establish “such conditions as provided in R.S. 15:574.4(H) as may be reasonable necessary to facilitate supervision.” LSA-R.S. 15:571.5(A)(2). Louisiana Revised Statute 15:574.4(H)(4) lists the conditions to which the board may require that a parolee conform. Louisiana Revised Statute 15:574.4(H)(4)(i) provides that the Board may require a parolee to “live and work at the places stated in his parole plan and not change residence or employment until after he has permission to do so from his parole officer.” Thus, LSA-R.S. 15:574.4(H)(4)(i) is the authority for imposing Condition 9 of Lee’s Conditions of Release.[5] Therefore, the first is *819 sue for our review presents a question of statutory interpretation.
The question presented is whether the term “residence” as it is used in Condition 9 of Lee’s Conditions of Release refers to a parolee’s living arrangements or refers to the physical address of where the parolee has stated he | fiwill live. Statutory interpretation begins “as [it] must, with the language of the statute.” State v. Ste. Marie, 98-1167, p. 1 (La.12/18/98); 723 So.2d 407, 408 (citing Bailey v. United States, 516 U.S. 137, 143, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995)).
Louisiana law on statutory interpretation is set forth in Louisiana Civil Code articles 9 through 13. Law is to be applied as written if it is clear and unambiguous. LSA-C.C. art. 9. If the statute’s language is susceptible of different meanings, we must seek the meaning that best conforms to the law’s purpose. LSA-C.C. art. 10. We must give the words of a law their generally prevailing meaning and examine ambiguous words in context. LSA-C.C. arts. 11 and 12. We must interpret laws on the same subject matter in pari mate-ria, or in reference to each other. LSA-C.C. art. 13; Ruiz v. Onate, 97-2412, pp. 4-5 (La.5/19/98); 713 So.2d 442, 444; Baton Rouge Union of Police, Local 237, I.U.P.A., AFL-CIO v. City of Baton Rouge, 96-1976, pp. 2-3 (La.App. 1st Cir.6/20/97); 696 So.2d 642, 643-644.
Using these guidelines, we shall determine the meaning of the word “residence” as it is used in Condition 9. It is obviously susceptible to different meanings, as plaintiff believes it means physical address, while defendants believe it has a broader meaning of living arrangement, encompassing both address and roommates. See Baton Rouge Union of Police, Local 237, LUPA., AFL-CIO, 96-1976 at p. 3; 696 So.2d at 644. Thus, we must ascertain the meaning of “residence” that best conforms with the law’s purpose.
Legislative intent is the fundamental question in all cases of statutory interpretation. Theriot v. Midland Risk Insurance Company, 95-2895, p. 3 (La.5/20/97); 694 So.2d 184, 186. In searching for legislative intent, the legislative history of the enactment in question and contemporaneous circumstances are helpful guides. Laws are presumed to be passed with full knowledge of all existing |7ones on the same subject and with appreciation of the principles of statutory construction. Wartelle v. Women’s and Children’s Hospital, Inc., 97-0744, p. 7 (La.12/2/97); 704 So.2d 778, 782. Statutes are to be interpreted in ways effectuating their purpose. Wise v. J.E. Merit Constructors, Inc., 97-0684, p. 8 (La.1/21/98); 707 So.2d 1214, 1218.
The purpose of parole conditions, and likewise conditions of release on diminution of sentence, is two fold: (1) to aid the parolee in assimilating into society by placing restrictions on his activities to reduce the potential for recidivism; and (2) while allowing the parolee more freedom and responsibility than if kept in prison, to continually supervise and restrict the activities of the parolee in order to protect society from possible anti-social behavior. Morrissey v. Brewer, 408 U.S. 471, 477-478, 92 S.Ct. 2593, 2598-99, 33 L.Ed.2d 484 (1972). While Lee’s argument on appeal recognizes that the purpose of parole is to help the parolee establish a new life, his argument overlooks that the other equally important purpose of parole is to protect society.
This protective purpose of parole is evidenced by legislative provisions which must be read in pari materia with LSA- • R.S. 15:574.4(H)(4)(i). For instance, all parolees are prohibited from possessing firearms or other dangerous weapons. LAC 22: XI. 125; LSA-R.S. 15:574.4(H)(4)(j). Additionally, a sexual offender while on parole is required to register with the local authorities and to provide notification to people living near the parolee’s address upon release on parole. LSA-R.S. 15:574.4(H)(2). Moreover, a sexual offender whose offense involved a *820 minor, as in the present case, is prohibited' from “engaging in any business or volunteer work activity which ... requires the offender to engage in significant amount of direct contact with minor children.” LSA-R.S. 15:538. In light of these provisions, it is clear that the Legislature is concerned with the public’s safety as well as with the parolee’s assimilating into society.
| sBearing these dual purposes in mind, we must determine the legislative intent in using the word “residence” in LSA-R.S. 15:574.4(H)(4)(i). By Acts 1981, No. 448, § 1 in subsection (H), the Legislature rewrote the conditions of parole which the. Department of Public Safety and Corrections was authorized to impose. Prior to the 1981 amendment, former LSA-R.S. 15:574.4(H) set forth the authorized conditions of parole. The condition of parole relating to change of residence and employment stated that the parolee would agree to “[r]eside at the place fixed in his Certificate of Parole and obtain permission from his parole officer prior to any change in his address or employment.” (emphasis added). Because the Legislature replaced the word “address” with “residence” in the 1981 amendment, we find that the Legislature intended to broaden the meaning of the condition relating to change of employment or residence.
In the instant case, as a specific condition of his parole, Lee was required to abide by an approved parole plan of residence and employment. It is undisputed that his original parole plan of residence involved his residing alone at his registered residence. It is further undisputed that Lee unilaterally modified his parole plan of residence by allowing his girlfriend and her two children to move into his residence, a change for which he did not seek or obtain permission from the parole officer. On January 5, 1998, pursuant to the conditions of his release, Lee’s parole officer visited him at his home. Because Lee’s parole officer was aware of Lee’s two previous convictions for sex offenses involving minors, the parole officer informed Lee that his new living arrangements were in violation of his parole conditions, specifically Condition 9. Therefore, we further determine that in light of the protective purpose of the conditions of parole and in light of the other legislative restrictions placed upon sex offender parolees, especially those restrictions contained in LSA-R.S. 15:538, the parole officer acted within his ^authority to order Lee not to live in the same house with his girlfriend’s minor children. Thus, Lee’s first issue presented is without merit.
Reprimand prior to arrest for violation of parole
In his second issue presented for our review, Lee claims that his parole officer promised Lee that he would be given a warning or a reprimand prior to an arrest for violation of his conditions of parole, and therefore, claims that he was arrested improperly because he was not given a reprimand or warning after the motion for preliminary injunction was denied. Insofar as Lee’s contention that his parole officer promised or guaranteed that Lee would be given a reprimand or as in this case, a second warning, before being arrested for violating a condition of release, there is no evidence in the record whether the parole officer gave such a guarantee, or not. Accordingly, this issue as to whether a reprimand was due cannot be properly reviewed by this court. LSA-C.C.P. art. 2164; Our Lady of the Lake Hospital v. Vanner, 95-0754, p. 3-4 (La. App. 1st Cir.12/15/95); 669 So.2d 463, 465.
CONCLUSION
In summary, we find no error in the trial court’s judgment denying Lee’s request for preliminary injunction. We agree with the trial court’s determination that the parole officer was within his authority to order that Lee not reside with two minor children. For the foregoing reasons, the lower court judgment denying the motion for preliminary injunction is *821 affirmed. No costs are assessed in this pauper suit.
AFFIRMED.

. Louisiana Revised Statute 15:571.5 reads, in pertinent part, as follows:
§ 571.5. Supervision upon release after diminution of sentence for good behavior; conditions of release; revocation
A. (1) When a prisoner committed to the Department of Public Safety and Corrections is released because of diminution of sentence pursuant to this Part, he shall be released as if released on parole.
(2) At least three months prior to the anticipated release due to diminution of sentence, the Secretary of the department shall notify the parole board and provide such information as is necessary to allow the board to establish such conditions as provided in R.S. 15:574.4(H) as may be reasonably necessary to facilitate supervision. If diminution of sentence is not prohibited by R.S. 15:571.3(C)(1) and the sentence is for a sexual offense as enumerated in R.S. 15:574.4(H)(2), then the provisions of R.S. 15:574.4(H)(2)(a) and (b) and (3) apply.
B. (1) Before any prisoner is released on parole upon diminution of sentence, he shall be issued a certificate of parole that enumerates the conditions of parole. These conditions shall be explained to the prisoner and the prisoner shall agree in writing to such conditions prior to his release on parole.
(2) The person released because of diminution of sentence pursuant to this Part shall be supervised in the same manner and to the same extent as if he were released on parole. The supervision shall be for the remainder of the original full term of sentence. If a person released because of diminution of sentence pursuant to this Part violates a condition imposed by the parole board, the board shall proceed in the same manner as it would to revoke parole to determine if the release upon diminution of sentence should be revoked.
C.If such person’s parole is revoked by the parole board for violation of the terms of parole, the person shall be recommitted to the department for the remainder of the original full term.

. Lee has previously challenged another condition of his release on Diminution of Sentence which this court decided in Lee v. State, 96-0108 (La.App. 1st Cir.9/27/96); 681 So.2d 1020, writ denied, 97-1016 (La.4/25/97); 692 So.2d 1099. Immediately after his release "as if on parole” in 1994, plaintiff challenged two conditions of his release pertaining to sex offender registration. The First Circuit held that the registration requirements of LSA-R.S. 15:542 could not be enforced against Lee as a condition of his release, since it operated as an ex post facto law, but, this court held that the notification requirements of LSA-R.S. 15:574.4 was not an ex post fact law and therefore were enforceable as a condition of his release. Lee, 96-0108 at p. 6; 681 So.2d at 1023.

. Although not part of the trial court’s record, according to appellant’s brief on appeal, on March 30, 1998, plaintiff was arrested allegedly "under the pretense of an old April 97 court capias.” Later the same day, the Department of Parole issued a warrant for plaintiff's arrest for violation of his parole.

. We note that the Parole Board has specified by regulation, which of the conditions listed in LSA-R.S. 15:574.4 are mandatorily imposed on every parolee. Condition 9, relating to change of residence and employment, is included in the regulation listing the conditions that must be imposed. See LAC 22: XI. 125(A)(9).