Dear Mr. Pinac:
You requested an opinion of this office concerning the application of certain eligibility requirements to Catholic school students under La. R.S. 17:176(F), which pertains to the exclusion of transfer students from extracurricular athletic activities during their first year of high school. Specifically, you ask whether the statutory term "organization or federation of nonpublic schools," as applied to Catholic schools, may broadly be construed as referring to Catholic schools as a whole, rather than to a specific Roman Catholic diocese.
The Louisiana High School Athletic Association ("Association"), a voluntary association of various high schools in Louisiana, has long implemented a rule governing the eligibility of transfer students to participate in extracurricular athletic activities ("Transfer Rule"). Under the Association's Transfer Rule, a student who attends a school outside of his/her "attendance zone" is automatically ineligible to participate in extracurricular athletic activities for one year unless an exception to the Transfer Rule applies.[1] La. R.S. 17:176(F) modified the operation of the Transfer Rule as follows:
 Notwithstanding any policy, rule, or regulation of the Louisiana High School Athletic Association to the contrary [. . .], no student otherwise eligible to participate in an extracurricular interscholastic athletic activity shall be determined ineligible for or otherwise prohibited from participating in such activity during the student's first year of high school because the student attends a state-approved nonpublic high school that is located outside the attendance zone recognized for such student by the Louisiana High School Athletic Association provided that both of the following apply:
 (1) The high school that is attended by the student is operated by the same organization or federation of nonpublic schools that operated the state-approved nonpublic school that was attended by the student during the previous school year.
 (2) There is no state-approved nonpublic high school available for the student to attend within the recognized attendance zone that is operated by the same organization or federation of nonpublic schools.
You advise that the Association, in applying the term "organization or federation of nonpublic schools" to Catholic schools, interprets it narrowly as referring to a Roman Catholic diocese within Louisiana, such that a Catholic elementary school graduate residing in one diocese and enrolling in a high school in a different diocese would be excluded from extracurricular athletic activities during his first year of high school, if there is a Catholic high school in the diocese where the student resides. You suggest a broader interpretation, which would equate "organization or federation of nonpublic schools" with Catholic schools as a whole, such that the graduate of a Catholic elementary school may transfer to the closest or any Catholic high school in Louisiana without losing eligibility for a year.
There are no statutory definitions or jurisprudential guidelines applicable to the issue. Accordingly, an analysis of the meaning and application of the term "organization or federation of nonpublic schools" should be based on the following well-established rules of statutory construction: When the language in the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. Civ. Code art. 10. The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter. La. Civ. Code art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. Civ. Code art. 12. Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning. La. R.S. 1:3.[2]
Consistent with the above principles, we examine the generally prevailing meaning and the common and approved usage of the words "organization or federation," the context in which they appear, and the legislative intent behind the applicability of Section 176(F).
The common dictionary definitions of the word "organization" are: an association; a group of persons organized for a particular purpose; a structure through which individuals cooperate systematically to conduct business; an administrative and functional structure (as a business or a political party); the administrative personnel of such a structure; something made up of elements with varied functions that contribute to the whole and to collective functions; an organism. See, e.g. The American Heritage Dictionary of the English Language (4th ed. 2000); Webster's II New College Dictionary (1995); Webster's Third New International Dictionary of the English Language Unabridged (1986). The common dictionary definitions of the word "federation" are: the act of federating, especially a joining together of states into a league or federal union; a league or association formed by federating, especially a government or political body established through federal union; something formed by federation, such as a federal government; a union of organizations. See The American Heritage Dictionary of the English Language (4th ed. 2000); Webster's Third New International Dictionary of the English Language Unabridged (1986).
In addition to analyzing the language of the statute, the legislative intent with respect to its applicability must also be ascertained. See Boyter, supra.[3] A careful review of the discussions at the House Committee on Education and the Senate Committee on Education[4] has failed to reveal whether the legislature intended the term "organization or federation" to signify broad religious denominations such as Catholic, Methodist, Baptist, etc., or smaller units within each such denomination, such as a Catholic diocese. The only portions bearing on the language "operated by the same organization or federation" at the House Education Committee hearing on April 23, 1997 are references to schools "run by the same system," without further clarification on what "system" means. The House Committee minutes of that hearing also uses the term "system" without further guidance. The Senate Education Committee meeting on June 5, 1997 similarly alludes to high schools "of the same nature" with no further clarification.[5]
We therefore discern no clear indication of the meaning of the term "organization or federation," nor a clear legislative intent as to whether that term should be interpreted to refer to religious denominations such as Catholic schools as a whole, or to units within the Catholic school system such as a diocese.[6] Any further efforts by this office to respond to your question would require the application of the law to facts involving the hierarchy of church organizations, ecclesiastical principles, or authority, which we must exercise extreme care to avoid. We therefore refer you to our earlier opinion, Opinion No. 97-354, in which we provided the following general guidelines on how to interpret the terms "organization or federation" and "operated by," as used in La. R.S. 17:176(F):
 "In determining whether an elementary, middle or junior high is operated by the same organization or federation as the nonpublic high school, neutral factors must be applied. In short, for parochial nonpublic high schools, questions of faith and/or doctrine must not be examined. Courts, when asked to determine ownership of church property, have evolved neutral factors. See e.g. Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979); Church of God In Christ vs. Graham, 54 F.3d 522 (8th Cir. 1995). Therefore, in determining whether the same organization or federation operates certain schools, factors such as corporation law, articles of incorporation, property ownership and other neutral factors should be determinative. Of course, similar factors should be applied to private nonparochial nonpublic schools.
 "Neutral factors should be employed to identify the entity who "operates" the nonpublic high school, i.e. the entity that controls it, sets its policies, employs people, owns property, authorizes activities and generally directs its path. After such an entity is identified, the same process should be applied to identify the entity that operates the "nonpublic school that was attended by the student during the previous school year." If the same entity, i.e. "organization or federation," operates both schools, the exception applies as long as the same entity does not operate a state approved nonpublic high school within the student's recognized attendance zone."
The "neutral factors" test continues to remain fully applicable to disputes in which hierarchical church organizations are involved. See Synanon Foundation, Inc. v. California,444 U.S. 1307, 1308, 100 S.Ct. 496, 497 (1979). The factors enumerated above should be applied to identify the entity that "operates" a nonpublic elementary school — i.e., the entity that controls the school, sets its policies, employs people, owns property, authorizes activities and generally directs its path. The same criteria should then be applied to identify the entity that operates the chosen nonpublic high school outside the student's attendance zone. If the application of these neutral factors shows that the entity "operating" the nonpublic elementary school is the same as that operating the nonpublic high school of the student's choice, and the student's attendance zone has no high school operated by that entity, then Section 176(F) would dictate no athletic ineligibility be imposed when the student attends the chosen high school. If the entity identified as operating the nonpublic elementary school is different from the one identified as operating the nonpublic high school, Section 176(F) would not exempt the student from the Transfer Rule's ineligibility.
Because the meaning of the term "organization or federation" as used in La. R.S. 17:176(F) is unclear and the legislative deliberations provide no further insight, and because we cannot definitively answer your question without delving into ecclesiastical matters such as the hierarchy and organization of the Catholic church, this office expresses no opinion as to whether that term refers to Catholic schools as a whole or a Catholic diocese. Rather, we believe it would be best if legislative clarification is sought on that issue, or alternatively, as explained above, the "neutral factors" test is applied to resolve the issue.
We hope this sufficiently answers your inquiry, but if we can be of further assistance, do not hesitate to contact us.
With best regards,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
[1] The Transfer Rule contains various exceptions under very specific circumstances, which do not pertain to the issue addressed here.
[2] Louisiana courts have consistently applied these rules of statutory construction. For example, see David v. Our Lady ofthe Lake Hosp., Inc., 02-2675 (La. 7/2/03), 849 So.2d 38: "Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. [. . .] [I]nterpretation of any statute begins with the language of the statute itself. [. . .] The proper connotation to be placed on a word in a statute does not depend on an isolated definition attributable to it; instead, the word and the context in which it is used shall be considered." Id., at 46-47. [Citations omitted.] Also see Succession of Boyter, 99-0761 (La. 1/7/00), 756 So.2d 1122: "The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law. [. . .] The rules of statutory construction are designed to ascertain and enforce the intent of the legislature. [. . .] The statute must therefore be applied and interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. [. . .] This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect." Id., at 1128-1129. [Citations omitted.] In addition, in interpreting the scope of the application of a statute, "we must not only analyze the language of the statute, but must also ascertain the legislative intent with respect to its applicability." Id., at 1129.
[3] It is possible that the legislature intended Section 176(F) as an exception to the Association's Transfer Rule, as stated in Opinion No. 97-354. Generally, where exceptions to a general rule are involved, it is "a well settled principle of statutory construction that exceptions to a general rule are narrowly constructed." Wartelle v. Women's and Children's Hosp., Inc.,
97-0744 (La. 12/2/97), 704 So.2d 778, 784. "A statute limiting the application of a general rule is an exception that must be strictly construed in order to give full effect to the legislative intent of the general rule." American Waste andPollution Control Co. v. Madison Parish Police Jury,488 So.2d 940, 944 (La. 1986). The Association's interpretation of Section 176(F) indicated in your request would be a narrow construction of the statutory exception to the Transfer Rule. However, in the present case, the "general rule" to which Section 176(F) may be considered an exception is not a statute, but a private association's rule, and is therefore not of equal rank to a statute. We therefore express no opinion on whether Section 176(F) should be construed narrowly.
[4] No official transcripts of the Senate and House Education Committee meetings addressing House Bill 311 (which led to the enactment of Section 176(F)) are available. The information on which we rely in our analysis of the legislative intent is based on our review of the official recording of those hearings obtained from the Secretary of State's office, as well as the official minutes of those meetings.
[5] At the Senate Committee meetings, questions were raised as to the meaning of the term "organization or federation;" as to possible limitations on the exceptions created by Section 176(F); and as to the disputes that may arise over the interpretation and administration of the provisions of Section 176(F). However, they were not addressed or resolved.
[6] During the Senate and House meetings, it was mentioned several times that the proposed legislation would allow a student of a nonpublic elementary school to attend the closest nonpublic high school of the same nature without losing eligibility. This clearly suggests some geographic limitations on the statutory exemption to the Transfer Rule, rather than a broad construction that would allow a student to attend a nonpublic high school "of the same nature" anywhere in the state. However, an amendment that would have limited the exemption to students attending the closest nonpublic high school failed at the Senate Committee. Thus, we cannot rely on the references to the "closest" school as supporting a narrow interpretation. On the other hand, the discussions also pertain to the creation of "districts" or "zones" for the Catholic school system, analogous to the "attendance zones" for the public school system, such that every Catholic elementary school student has a Catholic high school to attend without losing eligibility. These discussions suggest that the Catholic school system parallels the public school system, and the exemption focuses on creating zones within the Catholic school systems independent of the "attendance zones" based on public school districts used by the Association. These discussions support a narrow reading of the exception to the Transfer Rule, independent of the failed "closest school" amendment. However, the discussions do not clearly indicate that the statutory exception to the Transfer Rule is intended to be narrow, or if it is indeed narrow, how it should be limited. Questions on these issues were raised, but were not addressed.